WATERMAN *v.* THE STATE.

1. An accusation founded on the statute against common cheats and swindlers, which charges that the prosecutor relied on the representation of the seller that the horse purchased was " sound and all right," is not, because the representations charged are " too general, vague and indefinite," defective and insufficient in law ; nor is it defective because it does not set out in what particular the horse was diseased, when it further charges that " said horse was not sound and all right, but was diseased and unsound, and was absolutely worthless."

2. On the trial of one charged with such offense it was error to charge that " if you should come to the conclusion beyond a reasonable doubt that the seller represented the horse to be sound, a good farm work-horse, work anywhere with him, he was all right, a good farm horse ; that these representations proved to be false ; that he gave fifty dollars by reason of the making of these representations by the seller, and the defects were such that an ordinarily prudent man could not have seen the defects himself, and the seller from all the circumstances should have known what the defects were, it would be your duty to render a verdict of guilty against the defendant."   While the jury would be authorized to find from circumstances that knowledge of the defects existed at the time the representations were made, the defendant's knowledge of such defects, as a fact, must be proved in some way before the conviction will be authorized.

Submitted November 19, — Decided December 10, 1901.

Accusation of cheating and swindling.   Before Judge Bower. City court of Bainbridge.   October 3, 1901.

*Donalson & Fleming,* for plaintiff in error.
*Albert H. Russell, solicitor,* contra.

LITTLE, J.    Waterman was accused of the offense of cheating and swindling, the specific allegation being that he represented a certain horse was sound and all right, and by such representations induced Glisson to pay him fifty dollars for the horse, when in fact the horse was diseased, unsound, and worthless, and so known to the seller; that the defects in the horse were not patent; and not known by Glisson until after the purchase.    The accused on arraignment demurred to the accusation, his grounds of demurrer being that the accusation was defective because it did not set out what representations as to the soundness of the horse were made by the accused; that to represent "that said horse was sound and all right" was too indefinite to put defendant on notice, etc.    Also, that the accusation does not set out how and in what particulars the horse was diseased and unsound, etc.    The court overruled the demurrer, and the defendant excepted pendente lite; and the accused was put upon his trial.    The evidence of the prosecutor was positive to the facts, that he purchased the horse from the accused on the faith of representations made by him that the horse was sound and all right, was a good work-horse, etc.; that he paid defendant fifty dollars for the horse; that the horse was at the time diseased and unsound; that he did not know what was the matter with the horse; that he did not walk right; that when driven he would stagger from one side of the road to the other; that there was difficulty in his breathing; that when he attempted to use him to the plow he could not keep in the row; that the horse was worthless; that he appeared to be all right when purchased, etc.    The evidence for the defendant tended to show that the horse was sound and all right, and a good work-horse.    The defendant in his statement denied the alleged representations.    The jury returned a verdict of guilty, and Waterman made application for a new trial on several grounds, which being refused, he excepted.

1. Error is assigned to the judgment overruling the demurrer. We do not think that the judge erred in overruling the demurrer. While representations that a horse is "sound and all right and a good work-horse" are very general, they are neither vague nor indefinite; they mean nothing more nor less than that the horse has no disease, no material defects, and no infirmities in body or disposition which would prevent him from doing the work of a good, safe horse.    In the case of *Rainey* v. *State*, 94 *Ga.* 599, where a

horse was represented as being "all right," the representation was treated as being a proper basis for a prosecution for cheating and swindling, except for the fact that the defect in the horse was patent; and even from this ruling Bleckley, C. J., dissented. Nor was the accusation defective in that it did not set out the particulars as to the disease with which the horse was afflicted. Generally such should be alleged; but because there may be cases in which it is impossible to do so, from want of technical knowledge, the absence of particular averments is not fatal to the accusation, when the representations are material and comprehensive although alleged in general terms, and there are averments sufficient to charge their falsity.

2. Complaint is made that the trial judge erred in giving in charge to the jury several instructions, in which the same principle is involved; and it will be necessary to consider the correctness of only one of these charges, which was as follows: "If you should come to the conclusion beyond a reasonable doubt that the seller represented the horse to be sound, a good farm work-horse, work anywhere with him, he was all right, a good farm horse; that these representations proved to be false; that he gave fifty dollars by reason of the making of these representations by the seller, and the defects were such that an ordinarily prudent man could not have seen the defects himself, and the seller from all the circumstances should have known what the defects were, it would be your duty to render a verdict of guilty against the defendant." This charge contains an erroneous proposition of law, which must have been hurtful to the defendant. In effect the jury were instructed that if the accused made the representations charged, and that if they were false, and the defects in the horse were latent, and the prosecutor relying on them paid his money for the horse, and the seller *should* have known of such defects, he was guilty. The accused could not, under such circumstances, have been convicted unless at the time he made the representations he *knew* them to be false. Since the deceitful means, necessary to sustain a conviction in a case of this character, involve *knowledge* of the falsity of the representation by the seller, no action or proceeding can be maintained without proof of the *scienter:* deceit is the foundation of the action, which can not exist without knowledge of the falsity of the representation upon which the other party acted. Mr. Wharton

is amply supported by authority when, in his Criminal Law, in discussing this subject, he says (vol. 2, § 1185): "The statement must not only be false in fact, but false to the knowledge of its utterer." The knowledge that the representations were false must be proved to exist, before the offense charged is made out. Such knowledge may, however, be proved by circumstances, including the opportunities which the accused had to ascertain the facts; but it must be proved in some way to the satisfaction of the jury, before a conviction is authorized. We are not able to say, from a review of the whole charge given by the able and conscientious judge who presided at the trial, that the extract from the charge above quoted was not erroneous. The charge as a whole is very clear and comprehensive, and in the main correct, and deals in other of its parts with the necessity of proving the scienter, as we understand it We are yet impressed that inasmuch as the part complained of states clearly a distinct proposition complete in itself, to the correctness of which we can not subscribe, a new trial should have been granted.

*Judgment reversed. All the Justices concurring.*